UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TRICIA MARIE MYERS, | |
| Plaintiff, | Civil No. 24-1395 (JRT/LIB) |
| v. | |
| ITASCA COUNTY HRA, DIANE LARSON, CARRIE SCHMITZ, and KENDA RODDENBERG, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Tricia Marie Myers, General Delivery, Duluth, MN 55806, *pro se* Plaintiff.

Mary G. Dobbins, **LANDRUM DOBBINS LLC**, 7400 Metro Boulevard, Suite 100, Edina, MN 55439, for Defendants.

The Itasca County Housing and Redevelopment Authority ("HRA") notified Plaintiff Tricia Marie Myers that it planned to terminate her housing vouchers after it discovered she had engaged in illicit drug use. Myers laid out her objections to that decision in a letter to the HRA but notified the agency that she did not need an informal hearing to dispute the termination grounds. The HRA stuck by its decision and terminated her vouchers. Myers now brings this action, alleging a procedural due process violation due to the loss of her housing vouchers. Because the Court finds Myers waived her right to an informal hearing, it will grant Defendants' Motion for Summary Judgment.

## BACKGROUND

I.     FACTS

The Itasca County HRA and its employees administer the federally funded Section 8 Housing Choice Voucher Program ("HCV Program"). (Decl. of Diane Larson ¶¶ 1–2, May 30, 2025, Docket No. 54.) Beginning in October 2022, Plaintiff Tricia Marie Myers began receiving HCV Program vouchers from the HRA. (*Id.* ¶ 3, Ex. A.) In November 2023, the HRA notified Myers that it planned to terminate her vouchers effective January 1, 2024, because Myers had failed to report an increase in her household income. (*Id.* ¶ 4, Ex. B.) However, the HRA offered Myers an informal hearing to contest the HRA's findings, and that hearing occurred on January 9, 2024. (*Id.* ¶ 5, Ex. C.) The result of that hearing was a settlement: Myers could keep her vouchers, but she would need to repay the HRA for the excess benefits she received. (*Id.* ¶¶ 6–7, Ex. D, E.)

On January 6, 2024, a fire broke out in Myers's federally assisted housing unit. (*Id.* ¶ 9.) Five days later, Myers's landlord filed an eviction notice, alleging numerous lease violations, including some that arose out of the fire. (*Id.*) The HRA was not a party to that lease nor did the HRA take any adverse action as a result of the fire. (*Id.* ¶¶ 10–11.)

On January 31, 2024, the HRA notified Myers that it was terminating her HCV Program vouchers effective February 29, 2024, due to Myers' illicit drug use, to which she confessed in a post-*Miranda* admission following a December 2023 arrest. (*Id.* ¶¶ 12–14.) Again, the HRA notified Myers that she could request an informal hearing to challenge the termination but clarified that she must do so by February 14, 2024. (*Id.*

¶ 16.) On February 9, 2024, Myers wrote a two-page letter to the HRA to protest her termination but stated, "I do not need to be heard further on this issue nor do I request an informal hearing." (*Id.* ¶ 17, Ex. H.)

On February 28, 2024, Myers wrote another letter to the HRA, stating "I need a hearing for termination ASAP." (*Id.* ¶ 18, Ex. I.) However, because the deadline had passed, the HRA never conducted an informal hearing. (*Id.* ¶ 18.)

## II.   PROCEDURAL HISTORY

Myers brought this action against the HRA, as well as HRA employees Diane Larson, Carrie Schmitz, and Kenda Roddenberg in their official and individual capacities, alleging violations of her due process and equal protection rights in terminating her Section 8 housing vouchers. (Am. Compl. at 4, May 3, 2024, Docket No. 5.)

Myers moved for a preliminary injunction against the Itasca County District Court and the Minnesota Court of Appeals to enjoin them from moving forward with criminal prosecutions she alleges are in retaliation for this lawsuit. (Mot. Inj., Mot. Expedited Review & Inj., Jan. 13, 2025, Docket Nos. 32, 33.) The Court denied that motion, in part because those entities were not parties to this case. *Myers v. Itasca Cnty. HRA*, No. 24-1395, 2025 WL 1285991, at *1 (D. Minn. May 2, 2025). Myers then asked the Court to reconsider that denial. (Mot. Reconsider, May 29, 2025, Docket No. 51.)

Following the close of discovery, Defendants moved for summary judgment. (Mot. Summ. J., May 30, 2025, Docket No. 53.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**II.   ANALYSIS**

Prior to having her voucher terminated, Myers was entitled to an informal hearing with the following elements:

> (1) "timely and adequate notice detailing the reasons for a proposed termination"; (2) "an effective opportunity (for the recipient) to defend by confronting any adverse witnesses and

> by presenting his own arguments and evidence orally"; (3) retained counsel, if desired; (4) an "impartial" decisionmaker; (5) a decision resting "solely on the legal rules and evidence adduced at the hearing"; (6) a statement of reasons for the decision and the evidence relied on.

*Mathews v. Eldridge*, 424 U.S. 319, 325 n.4 (1976) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970)). Myers argues that Defendants violated her procedural due process[1] rights under the Fourteenth Amendment in a few different ways.

First, Myers asserts that her initial hearing, which resulted in a settlement with the HRA, was conducted by a reviewer who was not neutral. However, nothing Myers has produced in discovery supports this claim. The HRA has broad authority to select a reviewer of its choosing. *See* 24 C.F.R. § 982.555(e)(4)(i) (allowing the informal hearing to be conducted "by any person or persons designated by the [HRA], other than a person who made or approved the decision under review or a subordinate of this person"). Despite now claiming in hindsight that she did not agree with the outcome of that hearing, the record is clear that Myers settled this dispute and thus waived her right to seek judicial relief by signing an agreement that would allow her to continue using housing vouchers in exchange for partial repayments of her excess benefits. On this point, there is no procedural due process violation.

---

[1] In passing reference, Myers also alleges an Equal Protection claim. However, Myers provides no substantive basis for such a claim, and the Court cannot breathe life into that claim on her behalf.

Second, Myers asserts that she never waived her right to an informal hearing following the January 31, 2024, letter terminating her vouchers for illicit drug use. *See* 24 C.F.R. § 982.555(a)(1)(iv) (requiring "an opportunity for an informal hearing" before terminating a family's housing voucher in such cases). But again, the record says otherwise. By letter dated February 9, 2024, Myers stated, "I do not need to be heard further on this issue nor do I request an informal hearing." Myers now insists this letter is taken out of context and that she instead was referring to unrelated issues for her adult son. But the letter has the subject line, "Termination of Assistance" and opens with the following line: "This letter is in response to the notice I received in office regarding termination of my rental assistance as of February 2024." The balance of the letter discusses the very issue at the heart of this dispute: the HRA's decision to terminate her vouchers for illicit drug use. The HRA complied with its regulatory duty to provide Myers with the opportunity to be heard, but Myers rejected that offer. Myers did not suffer a procedural due process violation with this termination.

Finally, Myers asserts that none of the various termination letters were addressed to her adult son and therefore he suffered a procedural due process violation independent of her.[2] But HUD regulations refer repeatedly to the HRA's responsibility to

---

[2] The Supreme Court has recognized that a party may assert the rights of another so long as (1) "the party asserting the right has a 'close' relationship with the person who possesses the right," and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). However, no party to this litigation has briefed this third-party standing issue, and the Court need not address it to resolve this motion.

provide notice to "a participant family" and not a separate hearing and notice for each member of the household. *See* 24 C.F.R. § 982.555(a)(1), (c), (d), (e)(2)(i). Myers could have spoken up on her son's behalf when the family received notice of the terminations, as she has done for him in this litigation. Accordingly, the HRA's failure to separately provide notice and an opportunity to be heard to Myers's adult son does not constitute a procedural due process violation.

Overall, the record shows that the HRA provided Myers and her family with the kind of notice and opportunity to be heard that regulations and the Constitution require. The Court will therefore grant Defendants' Motion for Summary Judgment.

## ORDER

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendants' Motion for Summary Judgment [Docket No. 53] is **GRANTED**.

2. Plaintiff's Motion to Reconsider [Docket No. 51] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 19, 2025                                _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                                        United States District Judge